**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **RYDEX, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No.: 4:11-CV-00122** |
| | § | |
| **Vs.** | § | |
| | § | |
| **GENERAL MOTORS COMPANY, et al.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| **Defendants** | § | |

## PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF

In accordance with the Court's Scheduling Order (Docket Entry 241 and 279),

Plaintiff Rydex Ltd. ("Rydex" or "Plaintiff") respectfully submits this Opening Claim

Construction Brief regarding Rydex's proposed construction of the claim terms in U.S. Patent

No. 5,204,819 ("the '819 patent").

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .................................................................................................. 1

III.  CLAIM CONSTRUCTION STANDARD ......................................................... 3

   A.   Claim terms should be given their ordinary meaning. ................................... 3

   B.   Focus should be on the intrinsic evidence. ..................................................... 4

   C.   Scope should not be limited by an example. ................................................... 4

   D.   Means-plus-Function terms ............................................................................ 5

IV.   CONSTRUCTION OF CLAIM TERMS ........................................................... 6

   A.   Preamble terms ................................................................................................ 6

   B.   Means-plus-function terms ............................................................................. 8

      i.   Personal identification means for generating an identification signal
         identifying the person ............................................................................... 10

      ii.   Means associated with the fluid delivery system for storing and retrieving
         information and capable of being operatively linked to said personal
         identification means .................................................................................. 11

      iii.  Information communication means linking said fluid delivery system
         information means and said personal identification means ................................. 12

      iv.  Security means associated with said storage and retrieval device for
         verifying said identification signal prior to the delivery of fluid to the fluid
         container .................................................................................................... 13

   C.   Remaining terms ............................................................................................ 14

      i.    Information regarding the fluid delivery transaction is stored .......................... 14

      ii.   Memory key/ignition key ......................................................................... 15

V.    CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003) ................................................................. 3

*Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*,
  132 F.3d 701 (Fed. Cir. 1997) ................................................................. 4

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*,
  55 F.3d 615 (Fed. Cir. 1995) ................................................................. 3, 5

*Callicrate v. Wadsworth Mfg., Inc.*,
  427 F.3d 1361 (Fed. Cir. 2005) ................................................................. 6

*Comark Comms., Inc. v. Harris Corp*,
  156 F.3d 1182 (Fed. Cir. 1998) ................................................................. 4

*Cybor Corp. v. FAS Techs.*,
  138 F.3d 1448 (Fed. Cir. 1998) ................................................................. 3

*Eastman Kodak v. Goodyear Tire & Rubber Co.*,
  114 F.3d 1547 (Fed. Cir. 1997) ................................................................. 3

*Ekchian v. Home Depot, Inc.*,
  104 F.3d 1299 (Fed. Cir. 1997) ................................................................. 5

*Enercon GmbH v. Int'l Trade Comm'n*,
  151 F.3d 1376 (Fed. Cir. 1998), cert. denied, 526 U.S. 1130 (1999) ......................... 3

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
  222 F.3d 951 (Fed. Cir. 2000) ................................................................. 3

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999) ................................................................. 3, 5

*Kegel Corp. v. AMF Bowling, Inc.*,
  127 F.3d 1420 (Fed. Cir. 1997) ................................................................. 4

*Key Pharm. v. Hercon Labs. Corp.*,
  161 F.3d 709 (Fed. Cir. 1998) ................................................................. 4

*Kraft Foods, Inc. v. Int'l Trading Co.*,
  203 F.3d 1362 (Fed. Cir. 2000) ................................................................. 4

*Markman v. Westview Instruments,*
   517 U.S. 370 (1996) ................................................................................ 1

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995) (en Banc), aff'd 517 U.S. 370 (1996).......................... 3

*Micro Chem., Inc. v. Great Plains Chem. Co.,*
   194 F.3d 1250 (Fed. Cir. 1999) .................................................................... 6

*O2 Micro Intn'l Ltd. V. Beyond Innovation Technology Co.,*
   521 F.3d 1351 (Fed. Cir. 2008) ............................................................... 7, 16

*Omega Eng'g, Inc. v. Raytek Corp.,*
   334 F.3d 1314 (Fed. Cir. 2003) .................................................................... 3

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005)0 .......................................................... passim

*Pressure Prods. Med. Supplies v. Greatbatch Ltd.,*
   599 F.3d 1308 (Fed. Cir. 2010) .................................................................... 6

*Sandisk Corp. v. Memorex Prods., Inc.,*
   415 F.3d 1278 (Fed. Cir. 2005) ............................................................... 8, 12

*Scriptgen Pharm. v. 3-Dimensional Pharm., Inc.,*
   79 F. Supp. 2d 409 (D. Del. 1999) ............................................................... 4

*Specialty Composites v. Cabot Corp.,*
   845 F.2d 981 (Fed. Cir. 1988) ..................................................................... 5

*SRI Int'l v. Matsushita Elec. Corp. of America,*
   775 F.2d 1107 (Fed. Cir. 1985) .................................................................... 5

*Superspeed Software, Inc. v. Oracle Corp.,*
   447 F. Supp 2d 672 (S.D. Tex 2006).......................................................... 7, 16

*U.S. Surgical Corp. v. Ethicon, Inc.,*
   103 F.3d 1554 (1997) ............................................................................. 17

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996) .............................................................. 1, 3, 4

*White v. Dunbar,*
   119 U.S. 47 (1886) ................................................................................. 4

**Statutes**

35 U.S.C. §112 ................................................................................................................. 6, 8, 9

## I.      INTRODUCTION

Under *Markman v. Westview Instruments*, it falls to a district court to construe the scope and meaning of the patent claims. 517 U.S. 370, 390 (1996). This includes determining the scope of the patent—that is, the metes and bounds of the invention—as well as the meaning of terms used in the claims, providing guidance to a lay jury of what the claims actually mean. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). All of this is done as a matter of law, before the claims reach the fact finder to determine infringement, the ultimate issue in the case. *Id.*

One purpose of this process is to prevent the problems associated with the historical "battle of experts" or other testimony about the scope of the patent and the meaning of claim terms at trial. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (noting the difficulty of expert testimony even during the claim construction phase). Instead, once the Court construes the claims, outlining the scope of the patent rights, the fact finder can compare the accused product with the construed claims.  In many cases, the infringement question becomes trivial once the "scope and meaning" of the claims is understood. *See, e.g., Phillips*, 415 F.3d at 1309.

## II.     BACKGROUND

Rydex has asserted that Defendants infringe at least Claims 22, 38, 39 and 40 of U.S. Patent No. 5,204,819 ("the '819 patent") attached as Exhibit A.[1]  The asserted claims with the disputed terms in bold are provided below.

**Claim 22:**

Apparatus for controlling and memorializing a **fluid delivery transaction** requested by a person between a **fluid container** and a **fluid delivery system**, comprising:

---

[1] Rydex plans to no longer assert Claims 27 and 28 in this litigation, and thus has not included those claims here.

a. **personal identification means for generating an identification** [signal.identifying] *signal identifying* **the person**;

b. **means associated with the fluid delivery system for storing and retrieving information and capable of being operatively linked to said personal identification means**;

c. an RF link between said fluid delivery system information means and said personal identification means **for the transmission of operational energy for said personal identification means**;

d. **information communication means linking said fluid delivery system information means and said personal identification means**;

e. **security means associated with said storage and retrieval device for verifying said identification signal prior to the delivery of fluid to the fluid container**; and

f. **wherein information regarding the fluid delivery transaction is stored** at said fluid delivery system information means.

**Claim 38**:

Apparatus as defined in claim 22, wherein the personal identification comprises a **memory key**.

**Claim 39**:

Apparatus as defined in claim 38, wherein the memory key comprises an **ignition key** of a vehicle, the fluid delivery device comprises a fuel pump of the vehicle, and the fluid container comprises fuel lines leading to an engine of the vehicle.

**Claim 40**:

Apparatus as defined in claim 39, wherein the means associated with the fluid delivery system for storing and retrieving information and the security means comprise ignition switch control circuitry of the vehicle.

## III.    CLAIM CONSTRUCTION STANDARD

As the Court is aware, determining the proper meaning of patent claims is a question of law, placing the task of claim construction on the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  In performing its claim construction duties, the Court has established principles to guide it.

### A.    Claim terms should be given their ordinary meaning.

It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  The Court should first look at the claim language and ascribe the plain and ordinary meaning of a disputed term.  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ; *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995); *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999); *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000).  The Federal Circuit has indicated that the claim language itself defines the scope of the claim, and a construing court does not accord the specification, prosecution history and other evidence the same weight as the claims themselves. *Eastman Kodak v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1552 (Fed. Cir. 1997), overruled on other grounds by *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998). Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms. *See Vitronics*, 90 F.3d at 1582; *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms").  The court "indulge[s] a **heavy presumption** that claim terms carry their full ordinary and customary meaning unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.Cir.2003).

(emphasis added). "It is both unjust to the public and an evasion of the law to construe an invention in a manner different from the plain import of its terms." *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886), internal quotations omitted).

**B.    Focus should be on the intrinsic evidence.**

In construing the claims of a patent, courts properly begin with the patent claim itself, the specification of the patent and the patent's prosecution history. *Vitronics Corp. v. Cceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000); *Kegel Corp. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1426 (Fed. Cir. 1997). This is typically referred to as intrinsic evidence and in most cases should be sufficient to determine the meaning of a claim term. *Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.,* 132 F.3d 701, 705 (Fed. Cir. 1997). All other evidence, known as extrinsic, is typically not needed or used to properly construe the claims. In fact, when the intrinsic evidence is unambiguous, it is improper for the Court to rely on extrinsic evidence for purposes of claim construction. *Id.* at 706. In other words, "if the meaning of a disputed claim term is clear from the intrinsic evidence, that meaning ***and no other*** must prevail; it cannot be altered or superseded by expert witness testimony or other external sources simply because one of the parties wishes it were otherwise." *Scriptgen Pharm. v. 3-Dimensional Pharm., Inc.*, 79 F. Supp. 2d 409, 411 (D. Del. 1999) (quoting *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)) (emphasis added).

Although the specification is relevant to interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims. *Comark Comms., Inc. v. Harris Corp*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323. In fact, "[o]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1319-1320.

**C.    Scope should not be limited by an example.**

The Federal Circuit has repeatedly warned against confining claims to the often very specific embodiments of the invention described in the specification. *Phillips*, 415 F.3d at 1323.

Thus, it is clear that while claims should be read in view of the specification, it is improper to limit the scope of a claim to the preferred embodiment or specific examples disclosed in the specification. *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997); *Bell Communications*, 55 F.3d at 620. Therefore, if the written description supports the definition of the term that is apparent from the claim language, then reading in a further limiting definition would be improper. *Mantech v. Hudson Envtl. Servs.*, 152 F.3d 1368, 1374 (Fed. Cir. 1998).

The purpose of this prohibition is to preserve the function of the claims in a patent. If every claim were limited to the preferred embodiment, there would be no need for several claims. *See SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1107 (Fed. Cir. 1985). Consistent with this function of the claims, the Federal Circuit has routinely found that a patent is not restricted to the examples, but is defined by the words in the claims. *Phillips*, 415 F.3d at 1323. "That is not just because section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id.* For instance, in *Specialty Composites v. Cabot Corp.*, the Federal Circuit found that just because the three examples described in the specification all refer to external plasticizers, the term "plasticizers" should not be limited to external plasticizers. *Specialty Composites v. Cabot Corp.*, 845 F.2d at 981, 987 (Fed. Cir. 1988). Thus, as a general rule, modifiers should not be added to broad terms standing alone, and mere inferences drawn from a description of an embodiment (or example) of the invention cannot require a narrower definition of a claim term. *Johnson Worldwide*, 175 F.3d at 989, 991.

D.     **Means-plus-Function terms**

Means-plus-function claim elements are construed by first identifying the claimed function and then identifying the corresponding structure in the written description for

performing that function. *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).  Corresponding structure must include all structures that perform the recited function. *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1369 (Fed. Cir. 2005).  The law is clear that a means-plus-function claim element already includes structures other than the corresponding structure explicitly described in the specification, namely equivalents of the corresponding structure.  *Pressure Prods. Med. Supplies v. Greatbatch Ltd.,* 599 F.1308, 1317-1318 citing 35 U.S.C. §112, P 6.

## IV.    CONSTRUCTION OF CLAIM TERMS

### A.  Preamble terms

| Claim Term | Rydex's Construction | Defendants' Construction |
|---|---|---|
| fluid delivery transaction | These terms do not require construction. | A commercial exchange involving delivery of fluid |
| fluid container | | A reservoir for storing fluid |
| fluid delivery system | | A system that transfers fluid from an external source to fluid containers |

The terms "fluid delivery transaction," "fluid container" and "fluid delivery system" are easily understood.  A lay juror is able to understand what each of these terms means, and any further construction of this word does not add any clarity.

The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of the ordinary skill in the art in question at the time of invention.  *Phillips*, 415 F.3d at 1313.  In cases where the ordinary meaning of a term is readily apparent, no elaborate interpretation of the claims is necessary.  *Phillips*, 415 F.3d at 1314.  Accordingly, "district courts are not (and should not be) required to construe *every* limitation." *O2 Micro Intn'l Ltd. V.*

*Beyond Innovation Technology Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  In *Finjan*, the district court declined to construe the term "addressed to a client" where the defendants' proposed to construe the term "addressed" as "containing the IP [Internet Protocol] address of the client computer," and "client" as "the computer from which the user is making a request." *Id.* at 1206. The district court held that "addressed to a client" should be construed as having its plain and ordinary meaning and noted that the "defendant's proposed construction would unjustifiably narrow the term's broad scope, which was not explicitly limited or redefined by the specification." *Id.* The defendants appealed arguing that the district court violated the principles of *O2 Micro Int'l Ltd v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008). *Id.* at 1207. The Federal Circuit held that no such error occurred because the district court resolved the parties' dispute when it rejected the defendants' construction. *Id.* In this case, Defendants ask the Court to rewrite almost the entirety of Claim 22 in order to better suit their infringement arguments, ignoring the fact that the terms have no specialized or esoteric meaning.

Defendants improperly attempt to rewrite the preamble to avoid infringement.  However, "[w]hat is important is what the elements of the claim require, not what they cover.  Claims are not to be interpreted in view of the accused infringing device."  *Superspeed Software, Inc. v. Oracle Corp.,* 447 F.Supp. 2d 672, 680 (S.D. Tex. 2006). The preamble as written describes the invention clearly and concisely.  For exemplary purposes, Plaintiff has provided as Exhibit B a comparison of the claims as they would read with Plaintiff's proposed construction, and as they would read with Defendants' proposed constructions (excluding the function and structure of the means plus function terms).  Even a quick glance at this comparison confirms that the patentee's own language provides a readily apparent ordinary meaning, in contrast with the Defendants' strained and confusing proposals.

Defendants' proposed definitions seek to improperly add in limitations from a preferred embodiment that would exclude other embodiments, including embodiments specifically described and claimed in dependent claims. The term "fluid container" provides more clarity to a lay person than the Defendants' artificial "reservoir for storing fluid."

Defendants' proposed definition for "fluid delivery system", which adds a limitation that the fluid delivery system must transfer fluid from an external source to fluid containers, would exclude the preferred embodiment claimed in Claim 39 which states that the fluid container comprises fuel lines leading to an engine of the vehicle, indicating that the fluid delivery system is entirely internal, and not "a system that transfers fluid from an external source to fluid containers", as the Defendants have proposed.

Further, the spurious requirement that the "fluid delivery transaction" be commercial again limits the independent claim too narrowly to encompass the embodiment specifically claimed in dependent claims 39 and 40. "A claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct." *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (internal quotations omitted). Here, Defendants' proposed constructions would negate entire claims and therefore are not correct.

### B.  Means-plus-function terms

The parties have agreed that the following terms are "means-plus-function" terms that are governed by 35 U.S.C. § 112, ¶ 6, but dispute the construction of these terms:

| Claim Term | Rydex's Construction | Defendants' Construction |
|---|---|---|
| Personal identification means for generating an identification signal identifying the person | Function – <br><br> generating an identification signal identifying the person <br><br><br> Structure – a programmable | Function- <br><br> For generating a signal containing information that itself establishes the identity of the person requesting the |

| Claim Term | Rydex's Construction | Defendants' Construction |
|---|---|---|
| | read-only memory device, a power receive coil, a signal transmitting coil, a phase shift key encoder and a modulator plus equivalents | fluid delivery transaction<br><br>Structure-<br><br>A passive identification module that includes a memory that stores information that establishes the identity of the person |
| Means associated with the fluid delivery system for storing and retrieving information and capable of being operatively linked to said personal identification means | Function – storing and retrieving information<br><br>Structure – a central processing unit, memory and a data bus plus equivalents | Function – for storing and retrieving information and capable of being operatively linked to the personal identification means<br><br>Structure – a fuel pump module of a service station, pump truck, or stationary tank that includes a central processing unit and a non-volatile memory |
| Information communication means linking said fluid delivery system information means and said personal identification means | Function- linking said fluid delivery system information means and said identification means<br><br>Structure- a coil capable of transmitting a signal and a coil capable of receiving a signal | Function – for the communication of information between the fluid delivery system information means and the personal identification means<br><br>Structure – a signal transmitting coil and a signal receiving coil |
| Security means associated with said storage and retrieval device for verifying said identification signal prior to the delivery of fluid to the fluid container | Function – verifying said identification signal prior to the delivery of fluid to the fluid container (AGREED)<br><br>Structure – a signal receiving coil, a demodulator and a phase shift key decoder plus | Function – verifying said identification signal prior to the delivery of fluid to the fluid container (AGREED)<br><br>Structure – The specification does not disclose sufficient structure for performing the |

| Claim Term | Rydex's Construction | Defendants' Construction |
|---|---|---|
| | equivalents | recited function and therefore claim 22 is invalid at least under 35 U.S.C. § 112. |

i.   **Personal identification means for generating an identification signal identifying the person**

The concept of a "personal identification means for generating an identification signal identifying the signal" is discussed several times in the specification, with several types of associated structure mentioned.  The function of the personal identification is plainly set forth in the claim language itself – "generating an identification signal identifying the person."  *See* Claim 22.  Defendants' attempt to improperly include additional and unnecessary language should be rejected.

The structure identified by plaintiff is all found to be associated with a personal identification means within the specification:

a)   "The passive identification module thus functions like an identification card but which can be "petted" and read at a distance, permits the components of the active communication module 1000 to be completely sealed from the environment, is tamper proof, and can identify either a fuel container or an authorized person attempting to initiate a fuel delivery transaction."  17:28-24.

b)   "Yet a further feature is a system for identifying either a fluid container or an authorized person which utilizes a passive identification module that has no independent power source but receives its operational energy from an RF signal generated by the fluid delivery device."  2:16-20.

c)  "Identification information, such as the identity of a fluid container, fluid type for the container, and equipment type is stored in a <u>programmable, read-only memory device</u> 902."  16:15 – 19[2]; *See also* 16:20 – 25.

d)  "The passive identification module 900 includes a <u>power receive coil</u> 904 across which is connected a capacitor 906 selected to tune the coil to receive the 153.6 kHz power signal." 16: 36 – 39

e)  "The <u>PSK encoder 902</u> and <u>modulator 914</u> transmit the information stored on the PROM 902 through an LC circuit tuned to 76.8 kHz including a <u>signal transmitting coil</u> 916 and an appropriate capacitor 918." 16: 47 – 51.

Rydex points to specific structure in the specification that is linked with the claimed function, as required by Federal Circuit precedent. In contrast, Defendants' proposed structure is not, as stated, found in the specification, and seemingly relies on extrinsic evidence.  This approach should be rejected.  The proposed structure must be clearly linked to the function within the specification.

ii.    **Means associated with the fluid delivery system for storing and retrieving information and capable of being operatively linked to said personal identification means**

The Parties agree that the function of the "storing and retrieving means" is "storing and retrieving information."  However, Defendants also seek to import an additional claim limitation (i.e., "and capable of being operatively linked to the personal identification means") into the function of this term.  A plain reading of the claim language itself shows that this additional language is not related to the function of the storing and retrieving means, but rather describes one capability of the storing and retrieving means.  As such, this limitation should not be read into the function of the storing and retrieving means.

---

[2] All references made herein are to the '819 patent, in the following format Col: Lines.

Both Plaintiff and Defendants agree that at least a central processing unit and a memory are explicitly linked to this function in the specification. However, Defendants seek to limit the term to "a fuel pump module of a service station, pump truck, or stationary tank that includes a central processing unit and a non-volatile memory." Nowhere has the Patentee limited the scope of the claims to "a fuel pump module of a service station, pump truck, or stationary tank." Indeed, the claims themselves establish that the invention <u>actually claimed</u> in the '819 Patent covers the fuel pump of a vehicle. *See* Claim 39. As such, Defendants proposed construction would exclude not only a preferred embodiment but a <u>specifically claimed embodiment</u>. As the Federal Circuit has held, such a construction is "rarely, if ever, correct." *Sandisk Corp.,* 415 F.3d at 1285.

The structure associated with this function is not and cannot be linked to any specific type of fluid that is being delivered, especially as the claim language itself refers only to a fluid delivery system. It is clear that the structure that is performing the function is the CPU and some kind of memory, without any additional requirement of a "fuel pump module of a service station, pump trunk, or stationary tank."

### iii. Information communication means linking said fluid delivery system information means and said personal identification means

The function of this term, as set forth by the plain language of the claim itself, is "linking said fluid delivery system information means and said personal identification means." Defendants improperly attempt to change the function to "for the communication of information between the fluid delivery system means and the personal identification means", but there is no reason for this substitution.

The structure associated with the recited function is "a coil capable of transmitting a signal and a coil capable of receiving a signal." Defendants' identified structure is similar, but not quite

correct. The specification is clear that a single coil may both transmit and receive. "The coils 26, 76, 80 and 81 can also function as receiver." 6: 52-53.

### iv. Security means associated with said storage and retrieval device for verifying said identification signal prior to the delivery of fluid to the fluid container

The function of this term is agreed by both parties to be "verifying said identification signal prior to the delivery of fluid to the fluid container."

Defendants argue that there is no associated structure in the specification. However, the invention describes in several locations that "the information is used for security and record keeping purposes." The structure associated with the function is "a signal receiving coil, a demodulator, and a phase key decoder plus equivalents." The specification states, in part: "The coil 1012 may be any of the coils…The signal from the demodulator 1010 passes through a low pass filter 1016 and through a phase shift key decoder 1018 to a shift register 1020 which is connected to the data bus of any of the CPUs…depending on the application." In addition, Figure 12 illustrates the structure described above including a signal receiving coil (1012); a demodulator (1010) and a phase shift key decoder (1018):



*FIG.12*

The security means, connected to the "means associated with the fluid delivery system for storing and retrieving information and capable of being operatively linked to said personal identification means" (a central processing unit, memory and a data bus plus equivalents). Contrary to Defendants' position that the specification "does not disclose sufficient structure for performing the recited function," the specification provides significant disclosure supporting Rydex's proposed construction for this term.

### C.  Remaining terms

| Claim Term | Rydex's Construction | Defendants' Construction |
|---|---|---|
| Information regarding the fluid delivery transaction is stored | This term requires no construction | Information relating to a commercial exchange involving delivery of a fluid, such as price of fluid, date and quantity of delivery, that is memorialized for record keeping purposes |
| Memory key | This term requires no construction. | A memory module that is physically connected to a device to exchange data |
| Ignition key | This term requires no construction. | A mechanical key used in a motor vehicle to turn the ignition switch of the vehicle |

### i.    Information regarding the fluid delivery transaction is stored

The term "information regarding the fluid delivery transaction is stored" is easily understood by a lay person, including a lay juror, and does not require construction by the Court. Defendants seek to define "information regarding the fluid delivery transaction is stored" by importing limitations from a specific, preferred embodiment described in the specification.

Defendants' proposed construction is improper at least because it seeks to import a myriad of limitations from the written description into the claims. This is a "cardinal sin" of patent law. In addition, Defendants improper construction would exclude not only specific embodiments described in the specification, but specific <u>claimed</u> embodiment as well. If a construction that excludes a preferred embodiment is "rarely, if ever, correct," Defendants' construction that excludes a claimed embodiment cannot be correct.

As an example of the fatal errors in Defendants construction, adding the "commercial" limitation to this term, would exclude the embodiments claimed in Claims 39 and 40.. For the reasons explained above with respect to "fluid delivery transaction", this is incorrect, and is clearly a limitation added from another preferred embodiment. Defendants rely on a portion of the specification that states: "The second information device contains information identifying the fluid delivery system, the price of fluid, quantity and type of fluid being delivered, time, date, <u>and so on</u>." 1: 36 – 39. (emphasis added.) Thus, rather than declaring that this is the only kind of information that is stored, the patentee explicitly identifies these types of information as examples. It is noteworthy that the additional "commercial" limitation is not identified here at all and appears to have been created by Defendants from whole cloth.

### ii.     Memory key/ignition key

"Memory key" and "ignition key" do not require construction because terms are easily understood, even by a lay person.. At least anyone with a vehicle, including most, if not all, potential jurors, understand what an ignition key is. In addition, the term memory key has also become commonly used by even lay persons and does not require any special definition. Importantly, the patentee has not  acted as his own lexicographer by providing specialized definitions for either of these terms. For at least these reasons, these terms require no

construction.

Defendants have pointed to no support in the specification for their proposed definition of "ignition key."  In addition, Defendants' improper construction attempts to impose limitations that are not even described in the specification.  For instance, Defendants propose to limit the ignition key to "a mechanical key."  However, as Defendants are aware, many vehicle keys are no longer mechanical, but rather are electronic (i.e., they do not require a mechical key to turn the ignition switch of the vehicle).  While a mechanical key is one embodiment of the invention claimed in the '819 patent, it is not the only embodiment.  There is nothing in the '819 Patent that would justify the severe restriction Defendants seek to impose.

 of the entirety of Defendants' support for their improper definition of "memory key" is all derived from the Detailed Description of the Preferred Embodiment, and do not support Defendants' proposed definition.   Again, limitation of the claims to a specific, preferred embodiment is improper.   "The Federal Circuit has consistently found that a patent is not restricted to the examples but is defined by the words of the claims." *Superspeed Software, Inc. v. Oracle Corp.*, 447 F.Supp. 2d 672, 680 (S.D. Tex. 2006).  Here, the plain language of the term "memory key" should control and Defendants' improper construction should be rejected. Indeed, it would be a cardinal sin of patent law to allow Defendants to read limitations from the written description into the claims.

District Courts are not, and should not be, required to construe every limitation present in a patent's asserted claims.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1361 (Fed. Cir. 2008).  "Memory key" and "ignition key" do not require construction.  Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims.  *U.S. Surgical Corp. v.*

16

*Ethicon, Inc.,* 103 F.3d 1554, 1568 (1997).  Here, as with other disputed terms, the defendants' proposed definitions add unnecessary verbiage and confusion to words otherwise easily understood by the jury.

## V.    CONCLUSION

Rydex respectfully requests that any Order entered by the Court setting forth the meaning of any disputed claim terms be consistent with the definitions required by the specification and/or ordinary meaning of the terms in the '819 patent.  To the extent that Defendants attempt to vary or modify the ordinary meaning of the terms as used by the Patentees in his disclosure, Rydex asks this Court to reject Defendants' proposed constructions in favor of proper application of the law.

Respectfully submitted,


DATED: June 5, 2012                          /s/Edward W. Goldstein_____
                                             Edward W. Goldstein – Lead Attorney
                                             Texas Bar No. 08099500
                                             Alisa A. Lipski
                                             Texas Bar No. 24041345
                                             **Goldstein & Lipski, PLLC**
                                             1177 West Loop South, Suite 400
                                             Houston, TX 77027
                                             (713) 877-1515 – Telephone
                                             (713) 877-1145 – Facsimile
                                             Email: egoldstein@gliplaw.com
                                             Email: alipski@gliplaw.com

                                             Stephen F. Schlather
                                             Texas Bar No. 24007993
                                             **Collins, Edmonds &Pogorzelski, PLLC**
                                             1616 S. Voss Rd, Suite 125
                                             Houston, TX 77057
                                             (713) 364-2371 – Telephone
                                             (832) 415-2535 – Facsimile
                                             Email: sschlather@cepiplaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 5, 2012.  Any other counsel of record will be served by First Class U.S. Mail.

/s/ Edward W. Goldstein
Edward W. Goldstein