IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RYDEX, LTD., | § § | |
| Plaintiff, | § § | Civil Action No.: 4:11-CV-00122 |
| Vs. | § § | |
| GENERAL MOTORS COMPANY, et al., | § § | JURY TRIAL DEMANDED |
| Defendants | § § § | |

**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**

In accordance with the Court's Scheduling Order (Docket Entry 241 and 279), Plaintiff Rydex Ltd. ("Rydex" or "Plaintiff") respectfully submits this Reply Claim Construction Brief regarding Rydex's proposed construction of the claim terms in U.S. Patent No. 5,204,819 ("the '819 patent").

1

I.  **NATURE AND STAGE OF THE PROCEEDINGS**

Rydex has asserted that Defendants infringe at least Claims 22, 38, 39 and 40 of U.S. Patent No. 5204,819 ("the '819 patent").  The two sides have asked the Court to construe 11 terms that remain in dispute.  Rydex filed its initial claim construction brief on June 5, 2012 and the Defendants jointly filed their response brief on June 20, 2012.  It their response brief, Defendants have also asked the Court to rule that claims 39 and 40 are invalid.  Rydex will address both the claim construction and invalidity arguments in this Reply Brief.

II.  **ISSUES TO BE RULED UPON BY THE COURT**

There are two issues presently before the Court:

1. Whether or not claims 39 and 40 are improper under 35 U.S.C. § 305

2. The proper construction of the 11 claim terms disputed by the parties.

III.  **LEGAL STANDARDS**

A.  **Claim Construction**

As the Court is aware, determining the proper meaning of patent claims is a question of law, placing the task of claim construction on the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  In performing its claim construction duties, the Court has established principles to guide it.

   **1. Claim terms should be given their ordinary meaning**

It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  The Court should first look at the claim language and ascribe the plain and ordinary meaning of

a disputed term.  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999).

### 2.   Scope should not be limited by example

The Federal Circuit has repeatedly warned against confining claims to the often very specific embodiments of the invention described in the specification.  *Phillips*, 415 F.3d at 1323.  Thus, it is clear that while claims should be read in view of the specification, it is improper to limit the scope of a claim to the preferred embodiment or specific examples disclosed in the specification.  *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997); *Bell Communications*, 55 F.3d at 620.  Therefore, if the written description supports the definition of the term that is apparent from the claim language, then reading in a further limiting definition would be improper.  *Mantech v. Hudson Envtl. Servs.*, 152 F.3d 1368, 1374 (Fed. Cir. 1998). Reading limitations from the specification into the claim is a "cardinal sin" of patent law.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc).

### 3.   Means-plus-Function terms should be construed using two-step process

Means-plus-function claim elements are construed by first identifying the claimed function and then identifying the corresponding structure in the written description for performing that function.  *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).  Corresponding structure must include all structures that perform the recited function.  *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1369 (Fed. Cir. 2005).  The law is clear that a means-plus-function claim element already includes structures other than the corresponding structure explicitly described in the specification, namely equivalents of the corresponding structure.  *Pressure Prods. Med. Supplies v. Greatbatch Ltd.*, 599 F.1308, 1317–1318 citing 35 U.S.C. §112, P 6.

### B.   Improper Broadening under 35 U.S.C. § 305

"Determining whether a claim has been impermissibly broadened during the reexamination process, the court must first construe the claim terms to determine the scope of the claim.''

3

*Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1580 (Fed. Cir. 1995); *see Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369 (Fed. Cir. 1999).  Second, it must determine if the claim is broader in scope than the original claims by determining whether there exists any conceivable apparatus or process that would infringe the amended claim, but would not have infringed the original patent. *In re Freeman*, 30 F.3d 1459, 1464 (Fed. Cir. 1994).

IV. **ARGUMENT**

The Defendants have asked the Court to invalidate claims 39 and 40, which they believe were improperly added during the reexamination process.  Because Defendants essentially ignore the embodiments described in those two claims, Rydex has chosen to address that issue first in this Reply Brief.

A. **Newly added claims did not enlarge the scope**

Under Title 35 U.S.C. § 305, during the reexamination process, patent owners are permitted to add new claims in order to distinguish the invention as claimed from prior art.  Rydex agrees with Defendants that " [n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter."  35 U.S.C. § 305.  For that reason, Rydex added only dependent claims during the reexamination process.  The newly added claims are (1) more narrow rather than more broad in scope and (2) supported by the specification and therefore did not add new material or enlarge the scope of any claims.

1. **Dependent claims presumed to be more narrow**

In an effort to head off an argument about claim differentiation, Defendants cite to *Pfizer, Inc. v. Ranbabaxy Labs, Ltd.*, in which the Court held that a dependent claim was invalid because it included subject matter not within the scope of the claim from which it depends. *Pfizer*, 457 F.3d

4

1284, 1291–92 (Fed. Cir. 2006). In *Pfizer*, the patentee failed to include an explicit limitation of the independent claim in the dependent claim, in what both the lower court and the appeal court considered a drafting error. *Id.* The *Pfizer* case, however, is the rare exception to the well established rule that "under the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend." *AK Steel Corp. v. Sollac*, 344 F. 3d 1234, 1242 (Fed. Cir. 2003); *see*, *Wright Asphalt Prods. Co., LLC v. Pelican Ref. Co.*, LLC, 2011 U.S. Dist LEXIS 22309 (S.D. Tex. Mar. 7, 2011). Claims 39 and 40 are both dependent upon independent claim 22, which was confirmed during the reexamination process without substantive alteration.[1]

Further, Rydex's patent attorney who prosecuted the reexamination, Mr. Kent Herink, did not admit to trying to broaden the claims in reexam, as Defendants seem to imply in their Reply Brief.[2] In fact, Mr. Herink specifically disagrees with that proposition.

> Q – So, you were concerned that the original claims hadn't broad enough – broad enough to cover a subject matter that you believe Mr. Ryan felt was within the scope of the invention?
>
> A – I guess I have to disagree with that because 39 is dependent on 22. And I think sort of black-letter patent law says that 39 must be narrower than 22. And since 22 was confirmed – You know, we already had broader protection in 22 than arguably we have in 39. So, I guess I have to disagree with your question.[3]

Claims 39 and 40 must therefore be presumed to be more narrow than Claim 22 and do not enlarge the scope of any claim. Again, the case law supports Plaintiff's position. "'Indeed, where, as here, the claims describe the same relationship using different terms, the assumption is that the term in the dependent claim has a narrower scope. *See* 35 U.S.C. § 112, ¶ 4. (Subject to the

---

[1] Defendants correctly point out in footnote 11 of their Response Claim Construction Brief that only minor, non-substantive changes were made to correct grammar and punctuation.
[2] Defendant's Reply Brief at 32.
[3] Herink Depo. Tr. 167:18-168:10, attached hereto as Exhibit A

5

following paragraph, a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed.')" *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1335 (Fed. Cir. 2011).

### 2. New claims did not add new material

In a reexamination process, the PTO considers whether new claims are more broad than the original claims, as well as whether or not there is support for the new claims in the specification. *See Bionx Implants v. Biomet, Inc.*, 1999 U.S. Dist. LEXIS 21651 (N.D. Ind. Dec. 29, 1999). Therefore, this issue has already been initially decided by the PTO. During the reexamination process, Rydex cited to support in the specification for the new claims. Specifically, Rydex pointed to column 3, lines 41–50; Fig. 2; column 2, lines 15–20; column 5, lines 25–35; column 6, lines 19–25; column 17 lines 1–39 and elsewhere.[4]

At no time during the process did the PTO voice any objections to the new claims improperly broadening any claims or improperly adding new material. Furthermore, in his deposition, Rydex's prosecution counsel, Mr. Herink was taken through each claim element of the amended claims. He pointed to places in the specification that supported each element, further negating the assertion that claims 39 and 40 add new, unsupported matter to the patent.[5]

### 3. Claim terms must be construed first

The first step to a determination of the scope of a claim is claim construction. "Whether the scope of a claim has been impermissibly broadened on reexamination is a matter of claim construction," *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1580 (Fed. Cir. 1995); *see Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369 (Fed. Cir. 1999). "A claim of a

---

[4] 2006-01-12 Informal or Non-Responsive Amendment, pp. 11–13
[5] Herink Depo. Trans. Pp. 123:7–160:2 (attached hereto as Exhibit A)

reissue application[6] is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent." *In re Freeman*, 30 F.3d 1459, 1464 (Fed. Cir. 1994). Disregarding claims 39 and 40 for the moment, a system that infringes those claims would still infringe claim 22, which was reaffirmed during the reexamination process. Any apparatus that infringes claims 39 or 40 would also claim 22, as demonstrated by Plaintiff's infringement contentions in this case.

"To overcome the presumption that patents are valid, clear and convincing evidence is required.'' *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Not only have Defendants failed to put forth clear and convincing evidence, the Defendants have failed to put forth any evidence of an apparatus or process which would not have infringed the original patent, but would infringe the reexamined patent. *See Bionx Implants v. Biomet, Inc.*, 1999 U.S. Dist. LEXIS 21651 (N.D. Ind. Dec. 29, 1999) ("Biomet has provided no evidence of any conceivable apparatus or process which would not have infringed the original patent but would infringe the reexamined patent.").

**B. Claim Terms In Dispute**

    **1. Constructions must not exclude claimed embodiments**

The ruling on the scope of claims 39 and 40 is critical to the issue of claim construction because several of Defendants' proposed definitions would impermissibly exclude embodiments described in those two dependent claims. "A claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct." *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (internal quotations omitted.). Not only do the terms proposed by Defendants

---

[6] Reexamination applications are treated the same as reissue applications for purposes of determining whether or not a claim has been improperly broadened. In re Freeman, 30 F.3d 1459, 1464 (Fed. Cir. 1994)

7

exclude an embodiment, they exclude a claimed embodiment, thus rendering those claims nonsensical. Further, the dependent claims serve to show that Rydex never explicitly disavowed constructions that would include those embodiments, quite the contrary Rydex always considered those embodiments to be supported by the specification. For example, the specification states: "If the authorization code is correctly identified by the vehicle identification module as an authorized code, the operator will be allowed to start the engine and drive the truck tractor 12." Col. 3, lines 47–50. This preferred embodiment is the one claimed in claims 39 and 40. This portion of the specification was in the original application.

Defendants rely on *Eon-Net LP v. Flagstar Brancorp*[7] for the proposition that when a patent specification repeatedly and consistently defines the invention in a specific way, it must be construed in a manner consistent with that definition.[8] The *Eon-Net* case is not analogous to this matter. In *Eon-Net*, in which "document" was construed as "hard copy document," the words "hard-copy document" appeared throughout the specification. The Court asserted that its claim construction was based on the fact that "these statements about the invention are not limited to specific embodiments or examples, but describe and define the invention overall.'' *Id.* at 1322. In the present case, the words the Defendants ask the Court to insert into the constructions do not appear in the patent because they do not, in fact, describe the invention. Each and every purported limitation set forth by the Defendants is, at best, an example of an embodiment and claims should not be limited to a particular embodiment. "It is well settled that the role of a district court in construing claims is not to redefine claim recitations or to read limitations into the claims to obviate factual questions of infringement and validity but rather to give meaning to the limitations actually contained in the claims, informed by the written description, the prosecution history if in

---

[7] 653 F. 3d 1314, 1321–23 (Fed. Cir. 2011)
[8] Defendants Response Claim Construction Brief, p. 6

evidence, and any relevant extrinsic evidence." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005); *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011).

   a. "Fluid Delivery Transaction" (claim 22) - Defendants assert that the word "transaction" is ordinarily used to refer to an exchange that is commercial in nature, but cite no support for this blanket statement because it simply isn't accurate. The court "indulge[s] a **heavy presumption** that claim terms carry their full ordinary and customary meaning unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.Cir.2003). (emphasis added). Another issue with this contrived construction is that it fails to take into account the fact that claim 39 necessarily discloses an embodiment that is not "commercial" in nature, which is why the word "commercial" appears nowhere in the '819 patent. To limit the transaction to being commercial in nature would exclude a claimed embodiment. Though defendants ignore claims 39 and 40 entirely in their proposed definitions, arguing that they are invalid, they ignore that patentee has always argued that the specification supports these embodiments, the very opposite of the clear disavowal of claim scope that is required to narrow a claim.

   b. "Fluid Container" (claim 22) - Defendants argue that a fluid container, as cited in the preamble, must be a "reservoir for storing fluid." "Reservoir" does not provide more clarity than "container" to either one of skill in the art or a lay person. District Courts are not, and should not be, required to construe every limitation present in a patent's asserted claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). This term does not have more than one ordinary meaning, a fluid container

9

contains fluid. Defendants' construction may need its own construction. The term "container" is at least as easily understood to the lay person juror as the word "reservoir," perhaps more so. Claim 39, however, specifically cites an embodiment where the "fluid container comprises fuel lines leading to the engine." Thus, the term "fluid container" cannot and should not be limited to a reservoir if the term reservoir would necessarily exclude fuel lines. Defendants' construction may need its own construction. The term "container" is at least as easily understood to the lay person juror as the word "reservoir".

c. "Fluid Delivery System" (claim 22) - Defendants propose that the Court add a limitation into the term "fluid delivery system," requiring the transfer of fluid to be from an external source to fluid containers. They have not provided evidence that Rydex ever limited the claim scope in such a manner. While the specification discloses that embodiment, that is not the only embodiment and therefore shouldnot be limiting. Again, claim 39 expressly states that the fluid container comprises fuel lines leading to an engine of the vehicle, indicating that the fluid delivery system in that embodiment is entirely internal and not coming from an external source as Defendants propose. The drafting and allowance of these claims show that Plaintiff never disavowed this embodiment. Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims. *U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (1997). It is not an opportunity to limit the claims to a preferred embodiment.

d. "Information regarding the fluid delivery transaction is stored" (claim 22) –Again, Defendants try to limit the scope of this term by adding in the requirement that the information be "commercial." And once again, Defendants are relying on examples

given by the patentee which are intended to be particular embodiments.  It is clear from a reading of the patent that the list, which Defendants ask the Court to incorporate in the construction, is partial and not all inclusive: "the second information device contains information identifying the fluid delivery system, the price of fluid, quantity and type of fluid being delivered, time, date and so on."  '819 patent 1:36-39.  By adding the words "such as price of fluid, type of fluid, date and quantity of delivery," Defendants are not only improperly adding a limitation, they are unnecessarily narrowing the claim in a way that runs contrary to the patentee's intent.

a. "Memory key" (claim 39) – Defendants have asked the Court to limit a memory key to "a memory module that is *physically connected*," citing to one place in the specification that gives one example of what could constitute a memory key.  As with Defendants' other arguments, this too fails because it is but one possible embodiment of the claimed invention.  In fact, Rydex shows an exemplary memory key in an informational sales video, which is not physically connected to a device to exchange data.  *See* Exhibit B at 1:30–1:46.  Instead, the key has a coded radio-frequency identification ("RFID") module that stores the necessary identification information.  *See id*.  This video, which is dated November 11, 1990, less than three months after the '819 Patent was filed, shows that it would have been clear to one of ordinary skill in the art that the memory key could have used RFID and would not have to be physically connected to a device to exchange data, as argued by Defendants.  Rather than limiting the term, "unless required to do otherwise, a court should give a claim term 'the full range of its ordinary meaning as understood by an artisan of ordinary skill.'" *TIP Sys., LLC v. Philipps & Brooks/Gladwin*, 2006 U.S. Dist. LEXIS 98279, 15-16 (S.D. Tex. Feb. 21, 2006) (citing *Rexnord Corp. v. Laitram*

11

*Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)). The term memory key requires no construction and certainly should not be limited as Defendants suggest, because Defendants' construction would not permit the full range of the terms' ordinary meaning to one of ordinary skill in the art. Finally, Defendants' suggested construction would likely require further construction of the term "physically connected". A claim construction requiring further claim construction is obviously less than ideal.

b. "Ignition Key" (claim 39) – Again, Defendants attempt to narrow this construction by adding the limitation that the key be "mechanical" and again, this limitation is taken from one embodiment. "The Federal Circuit has consistently found that a patent is not restricted to the examples, but is defined by the words of the claims." *Superspeed Software Inc. v. Oracle Corp.*, 447 F.Supp.2d 672, 680 (S.D. Tex. 2006).

c. "Information Regarding the Fluid Delivery Transaction is stored." (claim 22) – As with "fluid delivery transaction" above, Defendants try to limit the scope of this term by adding in the requirement that the information be "commercial." Again, Defendants are relying on examples given by the patentee that are particular embodiments as opposed to explicit disavowals of claim scope.

It should be noted that contrary to Defendants' claims that Rydex is being overbroad and reaching, Rydex believes all seven terms have ordinary meanings that will be evident to a jury of lay persons. "A claim term will have either an applicant defined meaning, a technical meaning, or a commonly used meaning in lay language." *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-03724, 2012 U.S. Dist. LEXIS 17918, at *21–*23 (N.D. Cal. Jan. 31, 2012).

Rydex believes that the patentee did not act as his own lexicographer, giving any of these terms specialized meanings, and the Defendants, therefore, should not be allowed to do so either. The case law supports this position. " ' [A]s a general rule, all terms in a patent claim are to be given their plain, ordinary and accustomed meaning to one of ordinary skill in the relevant art.' *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). See also *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999) ('[W]ords in patent claims are given their ordinary meaning in the usage of the field of the invention, unless the text of the patent makes clear that a word was used with a special meaning.'). In addition, unless required to do otherwise, a court should give a claim term 'the full range of its ordinary meaning as understood by an artisan of ordinary skill.' *Rexnord,* 274 F.3d at 1342 (citing *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999))." *TIP Sys., LLC v. Philipps & Brooks/Gladwin*, 2006 U.S. Dist. LEXIS 98279, 15-16 (S.D. Tex. Feb. 21, 2006).

### 2. Means-Plus-Function Terms

a.  "Personal identification means for generating an identification signal identifying the person" –

When construing a functional statement in a means-plus-function limitation, a Court must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim. *Generation II Orthotics, Inc. v. Medical Tech., Inc.* 263 F.3d 1356, 1364 – 1365 (Fed. Cir. 2001). Defendants argue that this function somehow requires knowledge of the person's identity, such as a name or driver's license. They look to extrinsic evidence (dictionary definition) for the meaning of the word identity. Furthermore, they point to correspondence with the PTO in which the patentee distinguished his invention from prior art

that disclosed a vehicle identification code. Rydex does not argue with the fact that the '819 patent requires some identification of a person's rather than simply a vehicle identification code. However, Rydex disagrees that a person's identity can only be determined by a name or driver's license or other such identifying documentation. Again, Defendants are trying to add language to the claim that would improperly limit it to read on only one possible embodiment. A court may not construe a means-plus-function limitation by adopting a function different from that explicitly recited in the claim. *JVW Enters. V. Interact Accessories, Inc.* 424 F.3d 1324, 1331 (Fed. Cir. 2005). A court errs by importing the functions of a working device into the specific claims, rather than reading the claims for their meaning independent of any working embodiment. *Id.* Here, Defendants invite the Court to err by seeking to change the explicitly stated function.

      Defendants cite to a section of the specification that states: "Alternatively, the passive identification module 200 may serve as an identification device for a person rather than a fluid container. In such an instance, the information stored on the PROM would be information identifying the person." Col. 16: l8-24. Defendants have not adequately explained why they have chosen to include "passive identification module" as structure while excluding "a programmable read-only memory device". On the one hand, they argue that "Rydex's proposed structure is incomplete – memory along is not capable of performing the function." However, the passive identification module 900 shown in Figure 11 includes the programmable read-only memory device, a power receive coil, a signal transmitting coil, a phase shift key encoder and a modulator. Thus, Plaintiff's identification of the structure is the correct identification. Defendants proposed construction, especially their added limitation that the structure "includes a memory that stores information that established the identity of the person" is simply incorrect.

14

The kind of information that may be stored by the "personal identification means" is not corresponding structure.

    b. "Means associated with the fluid delivery system for storing and retrieving information and capable of being operatively linked to said personal identification means."

Rydex disagrees with Defendants' inclusion of "capable of being operatively linked to said personal identification means". While this language appears in the claim, it is clear that the "means" are only the "means associated with the fluid delivery system for storing and retrieving information." However, even for the moment accepting Defendants' incorrect identification of the function, it is clear that the structure that they have identified is incorrect. All of the parties agree that a central processing unit and a memory must be involved in "storing and receiving information." A fuel pump module of a service station, pump truck, or stationary tank alone simply cannot perform these functions. Having identified the correct structured associated with a "means associated with the fluid delivery system for storing and receiving information" that is "capable of being operatively linked to said personal identification means", the Defendants impermissibly add superfluous structure. A structure must be necessary to perform the claimed function. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003) citing *Northrup Grunman Corp. v. Intel Corp.*, 325 F.3d 1346, 1352 (Fed. Cir. 2003). The "means" that "storing and retrieves information" and is "capable of being operatively linked to "said personal identification means" is the central processing unit and the memory, not the apparatus that the central processing unit and the memory may be associated with in a specific preferred embodiment.

    c. "Information communication means linking said fluid delivery system information means and said personal identification means."

15

Again, Defendants misidentify the claimed function by rewriting and limiting the explicit function stated in the claim. As explained above, this is improper. The Court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language and only those limitations. (emphasis added) *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002) citing *Lockheed Martin*, 249 F.3d at 1324. It is improper to narrow the scope of the function beyond the claim language. *Id.* Therefore, the function should be construed exactly as it is stated within the claim: "linking said fluid delivery system information means and said personal identification means." Defendants' added "communication" requirement must be rejected outright to avoid error.

The claim does not require two separate coils. The "information communication means" that is explicitly tied to "linking said fluid delivery system information means and said personal identification means" is a coil structure. The portion of the specification cited to by Defendants, 16: 47 – 57 does indeed describe a "signal transmitting coil" and a "signal receiving coil" but there is nothing that would exclude a coil that is capable of both transmitting and receiving signals, and indeed one of skill in the art would understand that a coil could be capable of transmitting and/or receiving signals, depending on the circumstances.

    d. "Security means associated with said storage and retrieval device for verifying said identification signal prior to the delivery of fluid to the fluid container."

The parties properly agree here that the claimed function is exactly as written in the claim: "verifying said identification signal prior to the delivery of fluid to the fluid container". However, Defendants allege that there is not structure linked to this function. First, because the issue of indefiniteness is one of validity rather than claim construction, it is more appropriately addressed not at a claim construction hearing, but rather at a later summary judgment proceeding

(*Hardware Techs. Co. v. Toshiba Corp.*, 508 F. Supp. 2d 752, 773 (N.D. Cal. 2007)), particularly because indefiniteness involves the higher burden of proof of clear and convincing evidence (*see Kowalski v. Ocean Duke Corp.*, No. 04-00055 BMK, 2007 U.S. Dist. LEXIS 85481, at *8 (D. Haw. Nov. 19, 2007). Defendants cannot avoid a full-blown invalidity analysis and prevent Rydex from the opportunity to fully brief indefiniteness by trying to shoe-horn indefiniteness into the claim construction proceeding. *See Rhine v. Casio, Inc.*, 183 F.3d 1342, 1346 (Fed. Cir. 1999). Indeed, Defendants state that they "may also submit a separate motion for summary judgment of invalidity on this basis." Defendants' Brief at 22, footnote 6. They should not be allowed two bites at the apple.

      The structure that Rydex has identified is capable of "verifying said identification signal prior to the delivery of fluid to the fluid container." Defendants admit that: "The active communication module has a corresponding set of components – namely a receiving coil 1012, demodulator 1010 and PSK decoder 1018 – that are used to receive an identification signal being transmitted by the passive identification module. '819 patent, col. 16, ll. 53–58." Defendants' Brief at 21. It is clearly this receipt of the identification signal that verifies the identification signal prior to the delivery of fluid to the fluid container, and so this is the structure that has been identified by Rydex as corresponding to this function. If the written description contains an implicit description that a person of ordinary skill in the art would recognize as performing the recited function, the statutory requirement is satisfied. *U.S. Ethernet Innovations, LLC v. Acer, Inc.,* 2012 U.S. Dist. LEXIS 17918 (N.D. Cal. 2012) citing *Atmel Corp. v. Info Storage Devices, Inc.*, 198 F.3d 1374, 1381–82 (Fed. Cir. 1999). While Defendants claim that these structures are used only to "facilitate the transmission of the identification signal from one module to another" what is the purpose of the transmission if not to verify said identification signal prior to the

17

delivery of fluid to the fluid container? To hold otherwise is to negate the entire stated purpose of the invention: "Another feature of the present invention is positive identification of the fluid container for security and billing purposes to help prevent the delivery of fluid to unauthorized containers." Col. 2: l3–6. "Upon initiation of a fluid delivery transaction a communication link is established between the passive identification and active communication modules and will proceed only if appropriate authorization is received by the active communication module and an associated information storage and retrieval device." Abstract. For these reasons, it is clear that there is structure in the specification associated with this function.

Dated: 7/2/2012                                           Respectfully submitted,


                                                          /s/ Edward W. Goldstein_____
                                                          Edward W. Goldstein – Lead Attorney
                                                          Texas Bar No. 08099500
                                                          **Goldstein & Lipski PLLC**
                                                          1177 West Loop South, Suite 400
                                                          Houston, TX 77027
                                                          (713) 877-1515 – Telephone
                                                          (713) 877-1145 – Facsimile

                                                          Stephen F. Schlather
                                                          Texas Bar No. 24007993
                                                          **Collins, Edmonds &Pogorzelski, PLLC**
                                                          1616 S. Voss Rd, Suite 125
                                                          Houston, TX 77057
                                                          (713) 364-2371 – Telephone
                                                          (832) 415-2535 – Facsimile

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 2, 2012. Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein_____
Edward W. Goldstein